# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 6, 2011 Session

## IN RE ESTATE OF MARSHAL SAN MIGUEL

**Appeal from the Chancery Court for Knox County**
**No. 69238-3    Hon. Michael W. Moyers, Chancellor**

---

**No. E2010-02436-COA-R3-CV-FILED-FEBRUARY 10, 2012**

---

Michael San Miguel ("Claimant") filed a claim against his brother's estate, Marshal San Miguel ("Decedent"), alleging that Decedent was responsible for expenses and mortgage payments relating to their jointly-owned Louisiana property. Decedent's son, Nicholas Brandon San Miguel ("Beneficiary"), filed an exception to the claim. The clerk and master disallowed the claim. Claimant objected to the clerk and master's report, and the trial court precluded recovery. Claimant appeals. We reverse the court's preclusion of recovery of the mortgage payments and expenses and conclude that Claimant is entitled to reimbursement for the mortgage payments submitted on behalf of Decedent and a portion of the expenses incurred on behalf of the property. We affirm the court's decision in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Michael San Miguel, New Orleans, Louisiana, Pro Se.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellee, Nicholas Brandon San Miguel.

## OPINION

## I. BACKGROUND

Following the death of their mother in 1987, Claimant and Decedent each received an undivided one-half interest in their mother's property located in Louisiana. They received

the property as co-owners on May 1, 1990. Shortly thereafter, Decedent moved to California, while Claimant remained in Louisiana and fulfilled the mortgage obligation without help from Decedent. Claimant also lived in and continually repaired the residence on the property, incurring substantial expenses. Except for a one-time payment of $15,000, Decedent did not financially contribute to the expenses or mortgage obligation. Decedent eventually moved to Tennessee, where he purchased property and remained.

Decedent died on September 15, 2009. Decedent's will devised $20,000 and his undivided one-half interest in the Louisiana property to Claimant, who was named the executor of the estate. On November 2, 2009, a notice of publication to creditors was made. Less than three months later, Claimant filed a claim against the estate in the amount of $138,060.30, reflecting expenses incurred in the maintenance and repair of the property, payments made on the mortgage, and payments made or owed relative to the taxes on the property. Beneficiary filed an exception to the claim. At the hearing on the claim before the clerk and master, Beneficiary argued that the claim was barred by Tennessee's statute of limitations and statute of frauds and that any amount of recovery should be reduced by the value of Claimant's exclusive enjoyment of the property. Claimant argued that he had already reduced his claim by 30 percent in expectation of the reduction and submitted documentation reflecting the unclaimed expenses relating to the jointly-owned property.

Following the hearing, the clerk and master entered a report, finding that in cases involving real property, "Tennessee follows the law of the place where the immovable or real property is located" when determining "the rights and duties governing co-owners of real estate." Accordingly, the clerk and master found Tennessee's statute of limitations and statute of frauds inapplicable to the case and applied Louisiana law in determining whether the claim against the estate was proper. Recognizing that a written agreement for the care and maintenance of the property was not submitted, the clerk and master disallowed the claim, holding that Claimant had not "carried his burden to establish a use and maintenance agreement 'in fact' that would entitle him to reimbursement of expenses," that Claimant's "exclusive control, custody and enjoyment of the [property] cancel[led] any claim for reimbursement," and that Claimant would be unjustly enriched if the claim were allowed.

Claimant objected to the report and argued that the clerk and master had erroneously refused to consider his supplemental documentation reflecting the unclaimed expenses. In reviewing the case, the trial court refused to consider the unclaimed expenses. The court explained that it would not consider the expenses because the claim had not been formerly amended to include them. The court then affirmed the clerk and master's report. Specifically, the court adopted an $168,000 appraisal of the property as the "best evidence of the value of the home" and found that the reasonable rental value of the property was $840 per month pursuant to Louisiana Civil Code Article 2790. Taking into consideration

Claimant's displacement as a result of Hurricane Katrina, the court found that Claimant had the exclusive enjoyment of the property for approximately 172 months without any interference by Decedent. The court then determined that the value of Claimant's enjoyment of the property was $144,480, reflecting a rental value of $840 per month for a term of 172 months. The court held that the $138,060.30 claim was precluded because it was entirely offset by the value of the enjoyment of the property. This timely appeal followed.

## II.  ISSUES

We consolidate and restate Claimant's issues on appeal as follows:

A.  Whether the trial court erred in refusing to consider Claimant's supplemental documentation referencing additional unclaimed expenses.

B.  Whether Claimant is entitled to reimbursement for the mortgage payments submitted on behalf of Decedent.

C.  Whether the trial court erred in denying the claim against the estate for expenses relating to the maintenance and repair of the property.

D.  Whether Claimant is entitled to costs and attorney fees.

Beneficiary raised an issue for our consideration that we restate as follows:

E.  Whether permitting recovery of the claim would result in the unjust enrichment of Claimant.

## III.  STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). "Issues of statutory [interpretation] are questions of law, which are reviewed de novo without a presumption of correctness." *State v. Morrow*, 75 S.W.3d 919, 921 (Tenn. 2002). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

# IV. DISCUSSION

As a threshold matter, we must determine whether application of Louisiana law was appropriate. When Decedent moved to Tennessee, he established a residence, where he remained until his death.[1] Thus, Tennessee had jurisdiction for the original probate of Decedent's will. *Svoboda v. Svoboda*, 454 S.W.2d 722, 727 (Tenn. Ct. App. 1969); *Greene v. Greene*, 309 S.W.2d 403, 429 (Tenn. Ct. App. 1958). Claimant submitted a claim regarding debts owed on a property located in Louisiana. Issues surrounding the validity of that claim should be decided pursuant to the law of the state in which the property is located. *Kirkland v. Calhoun*, 248 S.W. 302, 304 (Tenn. 1923); *see also First Christian Church of Guthrie Ky. v. Moneypenney*, 439 S.W.2d 620, 625 (Tenn. Ct. App. 1968) ("[Q]uestions arising under wills in regard to real property are referred to the lex rei sitae."). Accordingly, we conclude that application of Louisiana law to this case on the substantive issues before the court was appropriate. "Tennessee's law governs the procedural aspects of this case even if [Louisiana's] law governs the substantive issues." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998).

## A.

Claimant asserts that before he submitted his claim against the estate, he reduced the total amount sought by 30 percent in accordance with Louisiana Civil Code article 806. Thus, his claim did not include $66,361.22 that he incurred for the maintenance of the estate. He argues that the trial court erroneously refused to consider the expenses that were not included in the original claim in determining that the value of Claimant's exclusive enjoyment of the property exceeded the amount claimed.

Claimant's attempt to add additional expenses to his claim is a matter of procedure; therefore, Tennessee law controls the issue. *Id.* at 5. The record reflects that the clerk and master did not specifically address the supplemental documentation and that the trial court held that consideration of the documentation was precluded because Claimant never formally amended the claim. Claimant asserts that he did not need to amend the claim because evidence of his reduction was not a claim upon the estate but was "a lack of claim for these expenses." Having reviewed the applicable law, we note that the claim was subject to reduction in proportion to the value of the exclusive enjoyment of the property. La. Civ. Code Ann. art. 806. Creditors are not taxed with reducing their claim by 30 percent. Additionally, there is no evidence in the record to suggest that a 30 percent reduction of the

---

[1]The record established that Decedent owned a home in Knoxville that was left to Beneficiary and that he never returned to Louisiana or California once he established the residence in Tennessee.

claim was commensurate with the value of the exclusive enjoyment of the property. In any event, Claimant should have formally amended the claim to include these expenses.

If Claimant's response were characterized as an amendment, the amendment should have been submitted in accordance with Tennessee Code Annotated section 30-2-307, which provides, in pertinent part,

> (e)(1) A creditor who has timely filed a claim against the estate shall file any amendment to its claim no later than thirty (30) days from the later of:
>
> > (A) The date an exception to the claim is filed; or
> >
> > (B) The expiration of the exception period.
>
> (2) Unless the court with jurisdiction over the probate of the decedent's estate grants an extension of time for amendment on the creditor's showing of extraordinary circumstances, any amendment filed after the time prescribed shall be void.

Claimant asserted that he sought an extension to amend the pleadings; however, the record does not indicate that his request was granted. The period in which to file an exception expired on April 1, 2010.[2] *See* Tenn. Code Ann. § 30-2-314(a). The exception to the claim was actually filed on February 26, 2010, while Claimant's "response" was filed on May 15, 2010. Accordingly, we uphold the trial court's refusal to consider the evidence of the unilateral reduction because the claim should have been amended by May 2, 2010.

B.

Claimant argues that the trial court erred in denying his claim of reimbursement for half of the mortgage payments that he submitted in fulfillment of a joint obligation relating to the property. Beneficiary admitted at oral argument that reimbursement for fulfillment of the mortgage obligation was appropriate.

Pursuant to Louisiana law, Claimant and Decedent inherited the property as co-owners and were jointly "obligated on the mortgage." *Cahill v. Kerins*, 784 So.2d 685, 691 (La. Ct. App. 2001). A mortgage is "'a nonpossessory right created over property to secure the performance of an obligation.'" *Roque v. Tate*, 631 So.2d 1385, 1386 (La. Ct. App. 1994) (quoting La. Civ. Code art. 3278). Decedent, "as a co-debtor under the promissory note, was

---

[2]The notice to potential creditors was given on November 2, 2009.

required to reimburse [Claimant] for his payment of [Decedent's] portion of the [inherited] contract obligation." *Sampognaro v. Sampognaro*, 952 So.2d 775, 780 (La. Ct. App. 2007) (citing La. Civ. Code art. 1804). However, Claimant's documentation reflects payment for late fees that should not be charged to the estate. An intensive review of the documents and additional testimony may be necessary to ascertain the portion of the payments that were submitted solely in fulfillment of the actual mortgage obligation inherited by Claimant and Decedent. *Succession of LeBlanc*, 577 So.2d 105, 109-10 (La. Ct. App. 1991). Accordingly, we believe that remand is appropriate for the trial court to ascertain the correct amount of mortgage payments attributable to the estate.

C.

Claimant requests reimbursement from the estate pursuant to Article 806 of Louisiana's Civil Code for half of the necessary expenses and expenses of maintenance and repair incurred for the Louisiana property. The amount sought is reflected in the following chart:

| Description | Amount paid | Amount sought |
|---|---|---|
| Renovation | $85,651.58 | $42,825.79 |
| Electrical | $15,721.93 | $7,860.96 |
| Foundation Repair | $15,600.00 | $7,800.00 |
| Taxes (1997-2006) | $12,203.94 | $6,101.97 |
| Renovation | $11,793.50 | $5,896.75 |
| Air Conditioning | $8,940.66 | $4,470.33 |
| Plumbing | $5,537.72 | $2,768.86 |
| Miscellaneous | $5,224.00 | $2,612.00 |
| Outstanding Taxes | 0 | $27,074.48 |
| **TOTAL** | $160,673.33 | $107,411.14 |

Having reviewed the amount claimed and the supporting documentation, we do not believe that the estate is liable to Claimant for any amount of taxes, penalties, and interest that were owed on the property but not paid by Claimant. Therefore, we reject that $27,074.48 portion of the claim, bringing the total amount of the claim against the estate to $80,336.66.

Issues pertaining to a co-owner's reimbursement claim for expenses relating to jointly-owned property are governed by the articles of Louisiana's Civil Code. These articles provide that "[o]wnership of the same thing by two or more persons is ownership in indivision." La. Civ. Code Ann. art. 797. A co-owner who incurs necessary expenses or expenses for the ordinary maintenance and repair of jointly-owned property is entitled to reimbursement pursuant to Article 806 of the Louisiana Civil Code Annotated. In

determining the amount of reimbursement owed for the type of expenses claimed in this case, we must consult Article 806, which provides,

> A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.
>
> If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.

La. Civ. Code Ann. art. 806.

Claimant admits that his claim should be reduced by the value of his enjoyment of the property but asserts that the trial court erred in calculating the reduction. He contends that his claim should have been reduced by half of the total rental value of the property. He opines that he had "no duty to account for his own personal occupancy and enjoyment of the co-ownership property" in the form of rent because Decedent was never dispossessed from the property. We agree with Claimant that he was not liable for rent because Decedent was never denied occupancy. *See McCarroll v. McCarroll*, 701 So.2d 1280, 1290 (La. 1997) ("[A] co-owner in exclusive possession may be liable for rent, *but only beginning on the date another co-owner has demanded occupancy and has been refused*."). However, the focus of the reduction at issue in this case is on Claimant's value of enjoyment, not Decedent's loss of rent. Louisiana jurisprudence on the way in which to reduce a claim for reimbursement based upon the value of an owner's exclusive enjoyment of jointly-owned property is scarce.

The leading cases on this issue are domestic cases in which a couple had purchased property and then separated, allowing one partner to maintain the exclusive use and enjoyment of the jointly-owned property. In *Cahill*, the parties were never married but maintained a relationship for approximately 26 years. Following their separation, boyfriend requested reimbursement for his payment of the mortgage and maintenance expenses relating to their jointly-owned property. The appellate court granted the request for reimbursement for half of the mortgage payments pursuant to *Roque*. Without extensive analysis, the court held that boyfriend was not entitled to reimbursement for the other expenses because the expenses were totally offset by the value of his use and enjoyment of the property, which was calculated using *half* of the monthly rental value of the home. *Cahill*, 784 So.2d at 691. In another relevant case decided eight months after *Cahill*, the appellate court upheld the trial court's denial of a husband's claim for the payment of taxes and maintenance expenses relating to jointly-owned property incurred during the marriage. *Lupberger v. Lupberger*,

805 So.2d 264, 266 (La. Ct. App. 2001). The court never determined the monthly rental value of the property but held that husband's claim was entirely offset by his exclusive use and enjoyment of the property. *Id.* at 274-75. Approximately six years later, the appellate court considered a husband's claim for property taxes, insurance, and maintenance expenses incurred by him for the marital home. *Sampognaro*, 952 So.2d at 781. The court calculated the value of enjoyment of the property using *half* of the reasonable rental value of the home for the relevant time period.

Following our review of the applicable case law relating to the calculation of the value of a co-owner's exclusive enjoyment of jointly-owned property, we hold that the trial court erred. The court should have calculated the value of Claimant's exclusive enjoyment of the property using only half of the total rental value. Adopting Louisiana jurisprudence and the trial court's determination that Claimant occupied the property to the exclusion of Decedent for 172 months, we conclude that the value of Claimant's exclusive enjoyment of the property was worth approximately $72,240, reflecting a rental value of $420 per month (half of the total rental value). Accordingly, we reduce the $80,336.66 claim against the estate by $72,240, resulting in an award of $8,096.66 to Claimant.

## D.

Claimant asks for an award of "trial and appellate costs[] and attorney fees." We conclude that the trial court did not abuse its discretion in failing to award costs and attorney fees. *Martin v. Moore*, 109 S.W.3d 305, 313-14 (Tenn. Ct. App. 2003). Also, Claimant is not entitled to an award of appellate attorney fees because he represented himself on appeal.

## E.

Beneficiary asserts that any award to Claimant would unjustly enrich him because he enjoyed the exclusive use of the property and was given Decedent's interest in the property, a specific bequest of $20,000 from the estate, and a cash gift of $15,000 from Decedent.

This issue is governed by Tennessee law. "Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same." *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966). The terminology is frequently employed "interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between the parties." *Id.* "Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist." *Whitehaven Cmty. Baptist Church*, 973 S.W.2d 592, 596 (Tenn. 1998). This type of contractual obligation will be imposed when:

(1) there is no contract between the parties or a contract has become unenforceable or invalid; and

(2) the defendant will be unjustly enriched absent a quasi-contractual obligation.

*Id.* "The most significant requirement for a recovery on quasi contract is that the enrichment . . . be unjust." *Paschall's, Inc.*, 407 S.W.2d at 155. "The doctrine of unjust enrichment is founded upon the principle that someone who receives a 'benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so.'" *CPB Mgmt., Inc. v. Everly*, 939 S.W.2d 78, 80 (Tenn. Ct. App. 1996) (quoting *Lawler v. Zapletal*, 679 S.W.2d 950, 955 (Tenn. Ct. App. 1984)).

Implicit in this case is Decedent's generosity and willingness to assist Claimant. Decedent never expected rent or reimbursement from Claimant, who lived on the Louisiana property exclusively and without interference. Decedent would have been justified in demanding rent or partition of the property that he shared with Claimant. Instead, Decedent sent Claimant money on at least one occasion during his life, and upon his death, devised his interest in the jointly-owned property and a substantial sum of money to Claimant. Recognizing that Decedent has now been reimbursed for Claimant's exclusive use and enjoyment of the property, we cannot say that Decedent's monetary gifts in addition to the reimbursement for mortgage payments submitted on behalf of Decedent and necessary expenses incurred in maintenance of the property operated to unjustly enrich Claimant. Accordingly, we preclude denial of the claim on the theory of unjust enrichment.

## V. CONCLUSION

The judgment of the trial court is affirmed in part, as to the court's refusal to consider Claimant's additional expenses not referenced in the claim against the estate and the implicit denial of trial costs and attorney fees. The judgment of the trial court is reversed in part, as to the court's preclusion of recovery relative to the mortgage payments submitted on behalf of Decedent, its consideration of taxes owed on the property but not paid by Claimant, and its calculation of the value of Claimant's exclusive enjoyment of the property, resulting in the improper preclusion of recovery relative to the expenses incurred for the maintenance and repair of the jointly-owned property. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed one half to the appellant, Michael San Miguel, and one half to the appellee, Nicholas Brandon San Miguel.

_____
JOHN W. McCLARTY, JUDGE