EDWARDS, Judge.
The issue in this suit to have a matrimonial agreement terminating the legal regime declared null is whether the failure of the trial court to hold a hearing with the parties and the signing of the agreement before it was approved by the court rendered the agreement an absolute nullity. We find that, under the circumstances here, the failure to hold a hearing and the pre-approval signing of the document did not nullify the agreement. We reverse the summary judgment granted by the trial court declaring the matrimonial agreement and a partition null and remand for further proceedings.[1]
Both parties to the matrimonial agreement, Pamela Donnell Boyer and her husband, Dudley J. Boyer, Jr., were represented by independent counsel. The matrimonial agreement terminating the community of acquets and gains that existed between the parties was executed before a notary and two witnesses, in compliance with Civil Code article 2331, on April 12,1985; as was a partition of the community property owned at that time. Mrs. Boyer’s attorney acted as notary on both of these documents. The parties, through their attorneys, submitted to the court a joint petition for establishment of a separate property regime and an affidavit executed by Mr. Boyer and Mrs. Boyer, and notarized by Mrs. Boyer’s attorney, stating that they had sought legal counsel, they had read the petition and the agreement, they understood the rules and principles involved, and that the agreement was in their best interest. Neither party requested a hearing or appeared before the court. The trial court reviewed the agreement and submitted documents and found that the parties understood the governing rules and principles and that the agreement was in the best interests of the parties. Court approval of the matrimonial agreement was obtained on April 19, 1985. That judgment was not appealed, and is definitive. The matrimonial agreement and the partition agreement were filed in the parish conveyance records on April 24, 1985.
On September 24, 1990, Mrs. Boyer filed a suit for declaratory judgment seeking to have the matrimonial agreement and the contemporaneously executed partition declared null and void. The petition alleged that the agreement was an absolute nullity because: (1) she had signed only under duress, and (2) the procedure followed to obtain court approval was defective.
Mrs. Boyer filed a motion for summary judgment praying that the agreement and the partition be declared null. As a basis for the summary judgment, she argued that the agreement was defective because: (1) the agreement was signed before court approval was given for the document to be signed, (2) a hearing, as contemplated by LSA-C.C. article 2329, was not held, (3) the trial court that granted approval was misled into believing that the agreement had not been signed on April 12, and (4) the agreement was not in authentic form. It was also argued that, if the agreement was null and without legal effect, the partition, which was entered into only because of the contemplated termination of the matrimonial regime, must also be declared null.
The trial court granted the motion for summary judgment and found that the agreement and the partition were null and without legal effect because the procedures followed to obtain court approval for the agreement were insufficient to validate the *732 agreement. Specifically, the trial court found that no hearing was conducted and the agreement was signed before court approval was obtained. Because the agreement was invalid, the cause for the partition of the community property failed. Defendant, Mr. Boyer appealed.
Louisiana Civil Code article 2329 provides:
Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval.
Clearly, article 2329 imposes certain procedural limitations on the spouse’s ability to implement a contract for the termination of the legal regime during their marriage. The trial court must be satisfied that the spouses both agree to the change, that the spouses understand the rules and principles underlying a change in the matrimonial regime, and that the agreement appears to serve the best interest of the spouses.
The probable goal of the limitations appears to be the legislature’s attempt to protect the less worldly spouse and to prevent that spouse from entering into disadvantageous agreements that the spouse did not fully understand. See Spaht and Samuel, Equal Management Revisited: 1979 Legislative Modifications of the 1978 Matrimonial Regimes Law, 40 La.L.Rev. 83, 90-91 (1979). However, the best interest requirement, under traditional Civil Code analysis, does not dictate perfect symmetry in the agreement concerning assets or opportunities, if both spouses freely consented to the agreement. Neither should the agreement be judged based on a hindsight view of the success of various assets or opportunities. See id. at 95-97.
Signing the agreement in the form required by Civil Code article 2331 is one of the necessary steps in achieving a valid agreement modifying or terminating the matrimonial regime. Obviously, the clearest route to a valid agreement would be to sign the submitted agreement after the court has approved the document. However, we find no language in .article 2329 that requires a specific time sequence.
The parties were seeking the court’s approval of the agreement to terminate the matrimonial regime, not the court’s permission to sign or to contract. Under Civil Code article 2328, the parties are free to contract a separate property regime or to modify the legal regime, subject to certain procedural limitations. To complete the process, article 2329 requires a joint petition and court approval of the submitted contract or matrimonial agreement before the parties can enter into or, in other words, implement or participate in the agreement. To be able to submit an agreement to the trial court for approval, an agreement between the parties must be negotiated and finalized, at the very least, in spirit, if not by signing.
The spouses here each sought and obtained independent legal counsel and the petition to establish a separate property regime was submitted jointly. Mrs. Boyer does not claim that she did not join in the petition or that she did not sign or understand the matrimonial agreement. Rather she alleges that the document is defective because it was signed by the parties before court approval was granted.
We fail to see how the pre-approval signing of the document, under the facts here, defeats the goal of the legislature or the requirements of article 2329. Mrs. Boyer was represented by her own counsel. The agreement and the joint petition are very clear on the purpose of the documents; the purpose being to terminate the matrimonial regime. After court approval was obtained, the agreement between the spouses met the requirements of law and became a *733 valid matrimonial agreement terminating the matrimonial regime. Of course, if the court had disapproved the agreement between the parties, the process could not be completed and the matrimonial agreement would have no validity and could not be implemented.
We find no requirement in article 2329 for a hearing before the court can grant approval. Certain statutory laws in Louisiana do require a full hearing before a trial court can make a decision, but article 2329 is not one of them. Of course, it is within the discretion of the trial court to order a hearing and the parties may ask for a hearing. Neither was not done in this case.
The trial court did not base its grant of summary judgment on Mrs. Boyer’s arguments that the trial court was misled or that the agreement was not in authentic form, nor do we find these arguments to have merit. Although the matrimonial agreement submitted to the trial court exhibited no signatures, it clearly stated, in the closing paragraph, that the document had been signed in the presence of the undersigned notary and two witnesses on April 12, 1985. The agreement filed in the public record contained the required signatures and met the requirements of Civil Code article 1833. Mr. Boyer disputes the allegation that the court was misled and the record reveals no evidence that any attempt was made to mislead the court or to purposefully conceal the fact that the agreement had been signed on April 12.
Even assuming, for the sake of Mrs. Boyer’s nullity argument, that the pre-ap-proval signing created, at best, a relative nullity, the agreement was ratified by the parties after the approval was granted and the parties filed the documents in the public record. See Clay v. Clay, 358 So.2d 649, 651 (La.App. 1st Cir.1978). Mrs. Boyer makes no claim in the record that she did not agree to the filing or that the matrimonial agreement and partition of property was not followed.
For these reasons, we reverse the grant of summary judgment and remand for further proceedings consistent with this opinion. The costs of the appeal are assessed to appellee, Mrs. Boyer.
REVERSED AND REMANDED.

. Allegations by the plaintiff in the suit for declaratory judgment that she signed the matrimonial agreement terminating the legal regime and a partition of community property under duress were not decided by the appealed judgment. These issues remain pending in the court below.