WILLIAMS, J.
1 ,The defendant, Kimmy Olson, appeals a judgment in favor of the plaintiff, Melody Olson. The trial court ordered partition in kind of the parties’ co-owned property, allocating to plaintiff the ownership and debt of two condominium units and 100% of the shares of the business entities. The court assessed defendant with liability for his personal line of credit and allocated to the parties the movable property in their possession. For the following reasons, we reverse and remand for partition by licitation.
FACTS
Melody and Kimmy Olson were married in March 1987. The couple entered into a court-approved post-nuptial separation of property agreement in November 1987. During the marriage, the parties formed KM, Inc., as a real estate holding and investment company. The parties are the equal shareholders of KM, Inc., and Melody is the manager and operator of the company. Later, the parties formed two other real estate holding companies, KM Group, LLC, and KM Real Estate, LLC. The owner of each company is KM, Inc.
In 1996, Melody was awarded $2,440,163.05 from a sexual discrimination law suit against her employer. These funds were considered her separate property. Melody deposited the money in an AG Edwards investment account. A significant portion of these funds was loaned to the business entities formed by the parties, establishing a shareholder debt owed to Melody. In 2009, Melody and Kim Olson purchased units 201 and 901 of River-scape Condominium from KM Group, LLC, for the price of $1,251,000. Melody allocated $810,902.60 of her shareholder debt as the |2down payment and the remainder of the price was borrowed from Community Trust Bank. Kim did not contribute any funds for the purchase of the property.
In 2011, the plaintiff, Melody Olson, filed a petition for divorce and for partition of co-owned property against the defendant, Kim Olson. Defendant then filed a petition to annul the marital agreement. In September 2011, a judgment of divorce was rendered. After a hearing in October 2012, the court denied defendant’s petition to annul the post-nuptial contract. After trial on the partition, the district court held the matter open for the parties’ submission of post-trial memoranda and defendant filed an exception of prescription as to plaintiffs claims for recognition of her loans to the businesses.
Subsequently, the trial court issued written reasons for judgment finding that partition in kind was necessary. Noting that the value of the business entities is based solely on the value of the immovable property owned by each company, the court found that the combined value of this property is $8,533,250. This amount was reduced by liabilities of $2,853,904.47 and the shareholder debt of $1,189,599.36 owed to plaintiff by the companies, resulting in a negative value of $510,253.83 for the business entities. Regarding the condo units, the court found a negative value of $421,194.95, based on the appraised value of $751,000, less the mortgage debt of $361,292.35 and the $810,902.60 of the plaintiffs shareholder debt used as the down payment.
Accordingly, the trial court rendered judgment allocating to plaintiff the ownership and debts of the business companies and the condo units. | sThe court allocated to defendant any movable property in his possession and the debt owed for his personal line of credit. The court also denied the defendant’s exception of prescription. In addition, the judgment prohibited either party from performing a transaction that *543 would increase the other’s liability. After defendant appealed the judgment, plaintiff filed a motion for special assignment alleging that the value of the businesses could decline while the appeal is pending. This court denied the plaintiffs motion.
DISCUSSION
The defendant contends the trial court erred in denying his request for a jury trial in connection with his petition to declare the post-nuptial contract null. Defendant argues that his request for a jury was proper because he sought a declaratory judgment.
When a proceeding for declaratory judgment involves the determination of an issue of fact, such issue may be tried in the same manner as issues of fact are tried and determined in other civil actions. LSA-C.C.P. art. 1879. The nature and amount of the principal demand shall determine whether any issue in the principal or incidental demand is triable by jury. LSA-C.C.P. art. 1781(B). A trial by jury shall not be available in a partition or divorce proceeding. LSA-C.C.P. art. 1732. In Louisiana, a civil litigant’s right to trial by jury is statutory rather than constitutional and is dependent on the nature of the proceeding. Leonard v. Parish of Jefferson, 95-1082 (La.1/16/96), 666 So.2d 1061.
In the present case, as support for his contention, defendant cites in his brief Brumfield v. Brumfield, 477 So.2d 1161 (La.App. 1st Cir.1985), in which a jury considered the validity of a pre-nuptial contract. In Brumfield, |4no action for separation or divorce had been filed when the wife sued to have the pre-nuptial agreement declared null. Here, in contrast, the defendant filed his petition to declare the parties’ marital agreement null as a responsive pleading in the proceeding for divorce and partition. Thus, this case does not involve the same situation as Brumfield. Under Article 1732, a jury trial is not available in a partition or divorce proceeding. Based on the procedural situation of this case, we cannot say the trial court erred in denying defendant’s request for a jury trial regarding the validity of the marital agreement. The assignment of error lacks merit.
The defendant contends the trial court erred in failing to annul the parties’ 1987 post-nuptial agreement. Defendant argues that the matrimonial contract is invalid because the parties signed the agreement before judicial approval, the district court did not make a finding that the agreement was in the parties’ best interests and the same attorney represented both parties.
Spouses may enter into an agreement that terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. LSA-C.C. art. 2329. Article 2329 imposes certain procedural limitations on the spouses’ ability to implement a contract for the termination of the legal regime during their marriage. The district court must be satisfied that the spouses both agree to the change, that the spouses understand the principles underlying a change in the matrimonial regime and that the agreement appears to serve the spouses’ best interest. Boyer v. Boyer, 616 So.2d 730 (La.App. 1st Cir.1993).
In the present case, attorney Vicki Green testified that she represented | ¿both parties in preparing the matrimonial agreement. Green stated that she met with both spouses to review the agreement, the joint petition and their verifications. Green testified that at the time, the defendant expressed his understanding of *544 the matrimonial agreement. Green and plaintiff recalled that the parties and their attorney later went to the courthouse and met with the district judge, who spoke with both spouses before signing the judgment. At trial, defendant denied having appeared before the judge.
In his appellate brief, the defendant asserts that the attorney’s representation of both parties was “prohibited” by the Rules of Professional Conduct. At the time the parties signed the agreement, Professional Conduct Rule 1.7 provided that a lawyer “shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation.”
At trial, attorney Green testified that she consulted with both parties and advised them that their interests were potentially adverse. The trial testimony shows that both spouses were aware of and consented to the joint representation. Defendant did not object to such representation to the attorney or to the court at the time. Based on the evidence presented, defendant failed to show that attorney Green’s representation of the parties violated the Rules of Professional Conduct.
In support of his contention that the matrimonial agreement is invalid, defendant cites Trahan v. Trahan, 2012-173 (La.App. 3rd Cir.6/6/12), 91 So.3d 1291 and Williams v. Williams, 99-1101 (La.App. 3rd Cir.4/12/00), 6760 So.2d 469. In Trahan, supra, the court found that the Article 2329 requirements were not met because the husband did not certify to the district court that he thought the agreement was in his best interest and he was aware of the governing laws. In addition, he did not appear in court, he was not represented by counsel and the judgment did not include a finding that the spouses understood the governing principles and that their best interests were served. In Williams, supra, the court found that the submission of a joint petition with the attached agreement followed by an order of the district court was insufficient to satisfy the Article 2329 requirements.
Here, in contrast to the situations of Trahan and Williams, the defendant signed a verification certifying to the court that the matrimonial agreement was in his best interest and that he understood the principles involved. Defendant met with an attorney who discussed the agreement with him before he signed. Additionally, the judgment states that both parties appeared and exhibited to the court that they understand the rules and principles governing the matrimonial agreement.
We note that Article 2329 does not provide a procedural instruction as to how a district court should ascertain the best interests of the parties. The law does not specify the form that the court’s finding will take or how it must be expressed and does not require a hearing. See Trahan, supra; Boyer, supra. In this case, the district court reviewed the joint petition and the verifications, spoke with the parties and rendered judgment approving their agreement to establish a separate property regime. This approval indicates that the court made a finding that the agreement appears to serve the best interest of the spouses. After reviewing the record and the 17applicable law, we cannot say the trial court erred in concluding that the procedural requirements of Article 2329 were satisfied and that the parties’ matrimonial agreement is valid. This assignment of error lacks merit.

Partition

The defendant contends the trial court erred in deducting the amount of the *545 shareholder debt, which - was used as a down payment, from the appraised value of the jointly owned condo units. Defendant argues there is no legal basis for the court’s deduction because the shareholder loan of $810,902.60 is not secured by a lien or mortgage on the property.
Ownership of the same thing by two or more persons is ownership in indivi-sión. In the absence of other law or juridical act, the shares of all co-owners are presumed to be equal. LSA-C.C. art. 797. No one may be compelled to hold a thing in indivisión with another. Any co-owner has a right to demand partition of a thing held in indivisión. LSA-C.C. art. 807. The court shall decree partition in kind when the thing held in indivisión is susceptible to division into as many lots of nearly equal value as there are shares and the aggregate value of all lots is not significantly lower than the value of the property in indivisión. LSA-C.C. art. 810. When the thing held in indivisión is not susceptible to partition in kind, the court shall decree a partition by licitation or by private sale and the proceeds shall be distributed to the co-owners in proportion to their shares. LSA-C.C. art. 811.
In the present case, the trial court ordered partition, in kind of the co-owned condominium units, but then allocated “all ownership” and debt of the units to plaintiff. Such allocation of assets and liabilities is allowed under LSA-R.S. 9:2801, which applies to partitions of former community |8property. However, the record shows that the co-owned condominium units were purchased in 2009, after the parties executed the matrimonial agreement establishing a separate property regime between the spouses. As a result, the partition of their co-owned property is subject to the general rules of co-ownership found in LSA-C.C. arts. 797 et seq. These co-ownership rules, unlike a situation involving former community property, do not provide for the allocation of the parties’ liabilities in partitioning the co-owned property.
In the partition of co-owned property, Article 810 provides that the court shall order partition in kind when the co-owned property is susceptible to division into as many lots of nearly equal value as there are shares. Under Article 811, when the co-owned property is not susceptible to partition in kind, the court shall decree a partition by licitation and the proceeds shall be distributed to the co-owners in proportion to their shares. Property cannot be conveniently divided when a diminution of its value, or loss or inconvenience to one of its owners, would be the consequence of such division. Entrada Co. v. Unopened Succession, 38,800 (La.App.2d Cir.9/22/04), 882 So.2d 661; Cahill v. Kerins, 34,522 (La.App.2d Cir.4/4/01), 784 So.2d 685. When a thing is partitioned by licitation, a mortgage, lien or privilege that burdens the share of a co-owner attaches to his share of the proceeds of the sale. LSA-C.C. art. 815. When a partition is to be made by licitation, the sale shall be conducted at public auction. All counsel of record shall be given notice of the sale date. At any time prior to the sale, the parties may agree upon a nonjudicial partition. LSA-C.C.P. art. 4607.
19Here, the record shows that each party owns as separate property a one-half interest in two individual condominium units within a multi-unit development. Through application of the articles for partition of co-owned property, the defendant should have been recognized as an owner of a one-half interest in each condominium unit and he should have received an equal proportion of the property’s value. Thus, the trial court erred in awarding to plaintiff all ownership and all debt of both *546 condominium units. Because the court failed to divide the thing held in indivisión into lots of equal value as required for a partition in kind, we shall reverse the court’s allocation of ownership of the condominium units to plaintiff.
We note that the parties did not specifically litigate the issue of whether the co-owned condo units are susceptible to equal division. However, the trial testimony indicated that given the type of property involved, there is no practical method of dividing the condo units without diminishing their value. Where the record reflects clearly that the property cannot be divided in kind, there is no necessity to require additional evidence to that effect. Cahill, supra. Consequently, based upon the evidence contained in the record, we remand this matter and direct the trial court to order a partition by licitation of the co-owned condominium units.
In addition, the trial court allocated to the parties the ownership of the movable property in their possession. Under Article 807, co-owners are entitled to a partition of co-owned property. Thus, because the parties are separate in property and the movable property was wholly owned by each party and not co-owned, the movables were not subject to the partition. Consequently, that part of the judgment allocating ownership of the movable hnproperty must be reversed.

Corporate Shares and Property of Corporation and LLCs

The defendant contends the trial court erred in awarding to plaintiff all shares of stock of KM, Inc., and the assets and debt of the corporation and the limited liability companies. Defendant argues that the court’s error in partitioning the co-owned property resulted in an unequal allocation of property between the parties.
A juridical person is an entity to which the law attributes personality, such as a corporation. The personality of a juridical person is distinct from that of its members. LSA-C.C. art. 24. The general rule is that a corporation is a distinct legal entity separate from the individuals who own interests in the corporation. Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164 (La.1991). A corporation has the power to buy and sell property, make contracts, incur debt, sue and be sued. LSA-R.S. 12:41(B); Succession of Mydland, 94-050.1 (La.App. 1st Cir.3/3/95), 653 So.2d 8.
Shares of a corporation are the units into which the shareholder’s rights to participate in the control of the corporation, in its profits or in the distribution of corporate assets, are divided. LSA-R.S. 12:1(S). A share of a corporation may broadly be defined as the interest or right which the owner, who is called the shareholder or stockholder, has in the management of the corporation, in its surplus profits and, upon dissolution, in all of its assets remaining after the payment of its debts. Succession of Quintero, 209 La. 279, 24 So.2d 589 (La.1945).
Although shareholders have certain rights as provided by law and in the corporation’s articles or by-laws, such rights do not entitle shareholders |nto any direct ownership interest in the property owned by the corporation. Succession of Mydland, supra. The property of the corporation is not the property of the individual shareholders. Nor does a shareholder have a pecuniary interest in the property owned by the corporation. Mydland, supra. The shareholder’s interest in the corporation does not equate to ownership of specific corporate assets. The sale of corporate shares is not a sale of its assets. Fina Oil and Chemical Co. v. Amoco Pro *547 duction Co., 95-1877 (La.App. 1st Cir.5/10/96), 673 So.2d 668.
In the present case, the record shows that the parties are shareholders who own equal shares of KM, Inc. As shareholders, the parties fully own their shares and they are not co-owners of each individual share. Under Article 807, co-owners are entitled to a partition of co-owned property. Thus, because the parties are separate in property and are not co-owners of the shares of KM, Inc., the corporate shares cannot be subject to a partition. Consequently, the trial court erred in allocating to plaintiff all shares of stock of KM, Inc., in the partition proceeding.
In addition, as shareholders of KM, Inc., the parties do not have any ownership interest in the property owned by KM, Inc., including KM Group, LLC, and KM Real Estate, LLC. The record shows that the parties are not co-owners of any property owned by the corporation or the LLCs, which are separate legal entities capable of owning property. Without an ownership interest, the parties do not possess a right of action to demand partition of the property owned by the business entities. Thus, the court erred in allocating to plaintiff the ownership of all movable and immovable property owned by KM, Inc., KM Group, LLC, and KM Real Estate, LLC.
| iglf either of the parties seek to obtain ownership of the property owned by KM, Inc., or the LLCs, then the party would be required to dissolve the entities and have the assets liquidated. In a dissolution, a liquidator is appointed to close out the corporation’s affairs. LSA-R.S. 12:141. The liquidator has the authority to sue and be sued on behalf of the corporation and to sell the corporation’s assets. LSA-R.S. 12:145. A proceeding for involuntary dissolution may be instituted by a shareholder against a corporation. LSA-R.S. 12:143(B)(1).
At trial, the plaintiff asserted claims for recognition of shareholder loans that she made to KM, Inc., KM Group, LLC, and KM Real Estate, LLC, as reflected by a shareholder debt account established with each business entity. Plaintiffs claims regarding the shareholder debt involve the business entities’ assets and liabilities. As previously stated, the corporation and LLCs are not subject to the partition proceeding. In reaching this conclusion, we pretermit discussion of the assignment of error regarding prescription of plaintiffs claims concerning shareholder debt.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is reversed. This matter is remanded and the district court is directed to order a partition by licitation of the parties’ co-owned condominium units. Costs of this appeal are assessed to the appellee, Melody Olson.
REVERSED AND REMANDED.